**UNITED STATES of America,**
**Appellant,**

v.

**Candido Natal RIQUELMY and Felix**
**Lopez, Appellees.**

**No. 451, Docket No. 77–1385.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 6, 1977.

Decided March 16, 1978.

---

3. Pursuant to *F. W. Woolworth Co.,* 90 N.L.R.B. 289 (1950), and *Isis Plumbing & Heating Co.,* 138 N.L.R.B. 716 (1962).

948

Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., of counsel), for appellant.

Edwin Schulman, Brooklyn, N. Y. (Schulman & Laifer, Brooklyn, N. Y., of counsel), for appellee Riquelmy.

Julian G. Linker, New York City (Linker & Linker, New York City, of counsel), for appellee Lopez.

Before LUMBARD, SMITH and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

The Government appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge*, granting appellees' motion to suppress as evidence a quantity of heroin seized from a co-defendant.[1] All three men were charged in three counts with conspiracy to possess heroin with intent to distribute, 21 U.S.C. § 846 (Count One), possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1) (Count Two), and travelling in interstate commerce to promote and facilitate an unlawful activity, i. e., the possession of heroin with intent to distribute, 18 U.S.C. § 1952(a)(3) (Count Three). We reverse on the ground that neither appellee has standing to challenge the constitutionality of the seizure with re-

---

[1] This appeal originally involved three appellees, Candido Riquelmy, Eddie Riquelmy, and Felix Lopez. The evidence suppressed with respect to the prosecutions of all three had been seized from Eddie Riquelmy. On November 22, 1977, the Government withdrew its appeal from so much of the district court's order as suppressed the evidence with respect to Eddie Riquelmy. The Government also represents that it will not proceed with the prosecution of Eddie Riquelmy, and that it intends to move to dismiss the indictment against him in its entirety. Accordingly, the only remaining appellees in this action are Candido Riquelmy and Felix Lopez.

spect to the non-possessory offenses (Counts One and Three) and the Government has represented to us that if the order is reversed it will promptly move to dismiss the possessory charge (Count Two).

On the morning of March 17, 1977, Eddie Riquelmy, Candido Riquelmy, and Felix Lopez arrived by plane at LaGuardia Airport from Chicago. Their arrival was observed by Gerard Whitmore, a federal narcotics agent who testified that when the defendants walked from the airplane ramp into the terminal they appeared to canvass the faces of the people standing nearby as if to detect whether they were being watched. They then walked "in a triangular fashion" through the airport, maintaining this apparently pre-designed formation in silence as they made their way toward the terminal exit. While walking through the airport both Candido and Eddie Riquelmy repeatedly looked back toward the arrival-departure area from which they had come, and as the men approached the uniformed security guard's station near their gate, Whitmore reported that they "hugged" the opposite wall, keeping themselves as far away from the security personnel as physically possible. The defendants did not claim any baggage and began to converse for the first time after their arrival as they left the terminal building and walked to a taxi stand outside.

While they were waiting for a taxi, Whitmore approached the men, identified himself, and asked them whence they had come and whether they were travelling together. Candido Riquelmy stated that they were travelling together and had just arrived from California. Whitmore asked to see their tickets and identification. Candido Riquelmy showed Whitmore a ticket made out in the name of "C. Natal" and a Pennsylvania driver's license with his own name on it. Lopez presented his own New York driver's license and a ticket made out to a "T. Puente." Eddie Riquelmy produced a union membership card which bore his name, but claimed he had left his ticket on the airplane, although Whitmore testified that the ticket was visible protruding from Eddie Riquelmy's rear trouser pocket.

Whitmore asked the men to step out of the taxi stand line and into the terminal building where he could question them further. Once inside the terminal Whitmore called for assistance and asked Candido Riquelmy and Lopez to stand to one side next to a bank of telephones while he questioned Eddie Riquelmy, ostensibly about his identification, which Whitmore described as "looking homemade." Whitmore then asked Eddie Riquelmy to show him some further identification. Riquelmy, who was carrying a leather overcoat draped over his arm, responded to Whitmore's request by reaching into one of the pockets of the coat. Whitmore stopped Riquelmy's hand as it was reaching inside the pocket, and announced that he, Whitmore, would retrieve whatever papers were in the pocket.

Whitmore testified that in doing so he felt a hard, large bulge. From the pocket he withdrew a package, measuring approximately 2½" by 6", wrapped tightly in masking tape. With his pen, Whitmore punched a small hole in the package, confirming his suspicion that it contained heroin. At this point the Riquelmys and Lopez were arrested. Following the arrest, a bag of lactose, a dilutant for narcotics, was found above one of the telephones in front of which Lopez had been standing.

The only testimony at the hearing on appellees' motion to suppress was that of Agent Whitmore and Port Authority Police Officer William Towns, who responded to Whitmore's call for assistance and corroborated Whitmore's testimony.

In a three-page memorandum decision dated August 3, 1977, Judge Costantino suppressed as against all three defendants on all three counts, the heroin seized from Eddie Riquelmy. Relying on its own earlier decision in *United States v. Westerbann-Martinez*, 435 F.Supp. 690 (E.D.N.Y.1977), the court held that all three defendants had standing to challenge the seizure of the heroin. On the authority of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), Judge Costantino held that once Whitmore had the taped package in hand he should have obtained either Ed-

die Riquelmy's consent or a search warrant before puncturing it. Since the question of standing is the only issue presented for our review, we limit ourselves to that issue, without minimizing the importance of the other questions taken up by the district court.

### DISCUSSION

The sole claim on this appeal is that the district court erred in deciding that Candido Riquelmy and Felix Lopez had standing to contest the seizure of heroin from Eddie Riquelmy, since any invasion of his right to be free from unreasonable searches would not violate their rights.

■■■ As a general rule fourth amendment rights may not be asserted vicariously, *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968), and "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Id.* at 171–72, 89 S.Ct. at 965. See also *United States v. Tortorello*, 533 F.2d 809, 814 (2d Cir. 1976). A party seeking to suppress evidence on fourth amendment grounds must ordinarily demonstrate that the evidence was seized as a result of an unlawful invasion of his own legitimate expectation of privacy in the place searched or in his person, papers, or effects. *Mancusi v. DeForte*, 392 U.S. 364, 367–68, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *United States v. Oates*, 560 F.2d 45, at 52 (2d Cir. 1977). Usually he establishes standing by showing that he owned or possessed the property alleged to have been illegally seized or had a substantial interest in premises unlawfully searched.

An exception to this general rule is the concept of automatic standing. Under this principle, as originally formulated by the Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), a person has automatic standing to challenge the legality of a search or seizure where the same possession needed for standing is an essential element of the offense charged against him or he is "legitimately on premises where a search occurs . . . [and] its fruits are proposed to be used against him," 362 U.S. at 264, 267, 80 S.Ct. at 734 (1960). The Court's rationale in support of this rule was two-fold: (1) the unfairness of requiring a defendant to assert his proprietary or possessory interest in the items seized or premises searched when his statements could then be used to prove the crime of possession at trial, and (2) the so-called vice of prosecutorial self-contradiction, i. e., "allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes." *Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973).

The first part of the supporting rationale was later eliminated by the Supreme Court's decision in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), holding that a defendant's testimony in support of his motion to suppress may not be used against him at trial. *Id.* at 389–94, 88 S.Ct. 967. Whether the second basis—prosecutorial self-contradiction—would alone justify automatic standing was questioned but not decided by the Supreme Court in *Brown, supra,* 411 U.S. at 229, 93 S.Ct. 1565, and in view of this reservation we have declined the invitation to rule out automatic standing completely, and thus in effect implicitly overrule this aspect of *Jones*, until the Supreme Court rules on that issue. *United States v. Galante*, 547 F.2d 733, 737 (2d Cir. 1976); *United States v. Oates, supra,* 560 F.2d at 53.[2]

■■■ Until we receive further guidance from the Supreme Court with respect to whether the automatic standing principle of *Jones* remains viable we are governed by the Supreme Court's holding in *Brown v.*

---

**2.** We recognize that the Sixth Circuit has in *United States v. Delguyd*, 542 F.2d 346, 350 (6th Cir. 1976), held that the automatic standing rule of *Jones*, was implicitly overruled by *Simmons*.

*United States, supra,* 411 U.S. at 229, 93 S.Ct. at 1569, that

"[T]here is no standing to contest a search and seizure where . . . the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure."

The first of these criteria, which is essentially a restatement of that part of *Jones* dealing with the search of the friend's apartment in which Jones was present, has no relevance to the situation here, since the search here was in a public place in which appellees, although present, had no privacy interest. The fourth amendment protects people from unreasonable invasions of their legitimate privacy expectations by law enforcement officers. *Katz v. United States,* 389 U.S. 347, 351–52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While Jones had a protected privacy interest in his friend's apartment, no similar privacy of either appellee was violated, or even jeopardized, by Whitmore's search of Eddie Riquelmy in a public airport building.

The second *Brown* criterion recognizes that where an accused establishes a possessory or proprietary interest in the property seized he has actual standing. However, neither of the appellees here has ever claimed such an interest.

The third *Brown* criterion would continue to confer automatic standing upon a person charged with a crime of which an essential element is possession at the time of the seizure of the evidence sought to be suppressed. Count Two charges appellees with possession of heroin with the intent to distribute, 21 U.S.C. § 841(a)(1), an offense which does require proof of possession as an essential element. If either appellee were to be prosecuted for this possessory offense, he would, unless the *Jones* automatic standing principle is completely eliminated, have to be granted automatic standing to chal-

lenge the search of Eddie Riquelmy. Judge Costantino so held, and the Government does not appeal from that ruling.

However, Government counsel has represented to this court that it will move to dismiss Count Two if the case is remanded to the district court, and accordingly our reversal and remand of this case is conditioned upon dismissal of Count Two of the indictment with respect to each appellee.

■ After Count Two is dismissed neither of the two pending charges against appellees will be for possessory offenses. The Government need not prove that a defendant possessed heroin in order to convict him of conspiracy to possess it with intent to distribute it, 21 U.S.C. § 846, as charged in Count One. *United States v. Galante, supra,* 547 F.2d at 738; *United States v. Sacco,* 436 F.2d 780, 784 (2d Cir.), *cert. denied,* 404 U.S. 834, 92 S.Ct. 116, 30 L.Ed.2d 64 (1971). Similarly, the Government need not prove that a defendant possessed heroin to prove a violation of 18 U.S.C. § 1952(a)(3), as charged in Count Three. See *United States v. Prince,* 529 F.2d 1108, 1111–12 (6th Cir. 1976); *United States v. Pomponio,* 511 F.2d 953 (4th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975); *United States v. Gibson Specialty Co.,* 507 F.2d 446 (9th Cir. 1974); *United States v. Rizzo,* 418 F.2d 71, 74 (7th Cir. 1969), *cert. denied sub nom. Tornabene v. United States,* 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970). Therefore neither appellee has automatic standing to challenge the search and seizure with respect to the only charges that will remain pending against him.

■ To the extent that Judge Costantino relied upon his earlier decision in *United States v. Westerbann-Martinez,* 435 F.Supp. 690 (E.D.N.Y.1977), as entitling appellees here to standing, his decisions there and here must be rejected. In that case, which involved a contested search similar to the one at issue here, he held that a defendant who had not been searched had actual

standing to challenge the seizure of heroin from his co-defendant either because (1) the unsearched co-defendant was present when the search occurred, or (2) because the two defendants had been travelling together and the investigation that culminated in the search of one defendant had been directed at both defendants as a unit.[3] However, the Supreme Court's decision in *Jones*, insofar as it based its holding of automatic standing on Jones' presence in the searched premises, merely recognized that as an invitee living in the apartment Jones had a degree of privacy interest in the premises. Appellees here, however, gained no such interest by standing in a public place near Eddie Riquelmy when he was searched and the heroin was taken from his person. Nor do appellees gain standing from the fact that they were travelling together and treated as a unit by the police when the search occurred.

None of the decisions relied upon by the district court in *Westerbann-Martinez* alter the established principle that fourth amendment rights, being personal, may not be asserted vicariously. Indeed, the Supreme Court has rejected the proposition that any defendant, such as a fellow-traveller, should have standing to object to an allegedly illegal search of or seizure from another. See e. g., *Alderman v. United States, supra,* and the dissenting opinion of Justice Fortas, 394 U.S. at 208–09, 89 S.Ct. 961 (1968); *Brown v. United States, supra; United States v. Tortorello*, 533 F.2d 809, 812–14 (2d Cir. 1976). Regardless of whether we might believe that the deterrent effect of the exclusionary rule would be increased by enlarging standing along the lines taken by the district court in *Westerbann-Martinez*, this course is precluded by well settled precedent. A motion to suppress does not initiate a judicial evaluation of "the abstract propriety of . . . police conduct," *Terry v. Ohio*, 392 U.S. 1, 12, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889 (1968), but an adjudication of the specific interests, the personal rights, of isolated individuals. Therefore, we adhere to the general rule that, unless possession of the seized property is an element of the offense, an accused may not invoke the exclusionary rule unless he has an interest in the items seized or in the place searched that gives rise to a reasonable expectation on his part of freedom from governmental intrusion upon those premises or with respect to those articles.

For the reasons stated above, the order of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this decision on condition that the Government, within 14 days after issuance of the mandate, moves to dismiss Count Two of the indictment with respect to both appellees.

---

**3.** *United States v. Westerbann-Martinez, supra,* 435 F.Supp. at 692–94, involved two defendants who arrived at LaGuardia Airport from Chicago. They aroused the suspicion of a narcotics agent by "the way they were looking around." They were followed as they walked in silence through the terminal, and were described as repeatedly looking behind them. They were accosted outside the terminal in a taxi stand line by an agent who asked to examine their identification and tickets. Dissatisfied with one defendant's lack of identification, the agent directed the men to return to the terminal, where a conversation occurred during which the agent claimed he obtained the consent of one defendant to search a small bag. Heroin was found in the bag. Both men were charged in a three-count indictment with the same crimes cited in the indictment against appellees here. Both men moved to suppress the heroin, and the Government contended that the unsearched defendant did not have standing to challenge the search of the bag.