**UNITED STATES of America,
Appellant,**

v.

**John M. SALVUCCI, Jr., Joseph G.
Zackular, Defendants, Appellees.**

**No. 78–1529.**

United States Court of Appeals,
First Circuit.

Argued March 8, 1979.

Decided June 15, 1979.

John W. Laymon, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellant.

John C. McBride, Everett, Mass., for appellee, Joseph G. Zackular; and by Willie J. Davis, Boston, Mass., for appellee, John M. Salvucci, Jr.

Before ALDRICH and CAMPBELL, Circuit Judges, and GIGNOUX, District Judge*.

GIGNOUX, District Judge.

On May 15, 1978, defendants-appellees, John M. Salvucci, Jr. and Joseph G. Zackular, were indicted by a federal grand jury and charged in 12 counts with unlawful possession of checks stolen from the mail, a violation of 18 U.S.C. § 1708. The checks involved had been seized from an apartment rented by Zackular's wife at 93 Pleasant Street, Melrose, Massachusetts. The seizure was made by officers of the Massachusetts State Police acting pursuant to a search warrant issued by the Malden District Court.

Defendants filed a motion to suppress the seized checks as evidence against them at trial. This motion was granted by the district court, after hearing, on the ground that the affidavit supporting the search warrant failed to establish the requisite

* Of the District of Maine, sitting by designation.

probable cause for the issuance of the warrant. Thereafter, the United States filed a motion for reconsideration, arguing that defendants lacked standing to contest the search and seizures. After considering memoranda submitted by counsel, the district court reaffirmed its suppression order.

The Government's appeal from these adverse rulings presents two issues: (1) whether the affidavit supporting the search warrant established probable cause for the issuance of the warrant; and (2) whether defendants have standing to contest the search and seizures. As we conclude that the district court properly suppressed the checks, we affirm its order.

I

■ We address first the question of whether the supporting affidavit established probable cause for the issuance of the warrant. The warrant, authorizing the search of the premises located at 93 Pleasant Street, Apartment 93E, Melrose, Massachusetts, was issued by a clerk of the Malden District Court solely upon the basis of the affidavit of Massachusetts State Police Trooper Ronald J. Bellanti. The objects authorized to be seized were a checkwriting machine, other articles used to make forged checks, and forged checks. Bellanti's affidavit, the relevant portions of which are fully set out in the margin,[1] recited the following material facts. On October 24, 1976, Bellanti had received information from a reliable informant that on October 22, 1976, one Kathleen Burke had purchased four airline tickets with a forged bank check. The same informant also gave Bellanti information regarding defendant Zackular. This information concerned a conversation in which Zackular made statements regarding his possession of certain

1. The affidavit presented to the state court clerk reads, in relevant part, as follows:

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

As a result of information received from a relaible *[sic]* informant, who has provided me with reliable information in the past, to wit: On October 24, 1976 this informant told this officer that on October 22, 1976 four round trip open-end coach tickets were purchased at the TWA ticket counter at Logan Airport in East Boston for passage from Boston to Las Vegas, Nevada, and Las Vegas to Boston, with a forged bank check which carried the name of Marblehead Savings Bank for the sum of $1,552.00, and that this purchase was made by a Kathleen Burke, who was arrested for a like offense on October 23, 1976 by this officer. . . . As a result of the information furnished to this officer by the informant, and an investigation that was conducted, subject Kathleen Burke, on November 9, 1976 was served with a warrant at the East Boston District Court and charged with two complaints . . . . This informant also gave this officer information regarding a Joseph G. Zackular of 247 Washington St., Winthrop, Mass. This information was in reference to a conversation, in which subject Zackular had made statements regarding his possession of certain articles that he had in his apartment at 247 Washington St., Winthrop which were used to manufacture counterfeit licenses, and to manufacture forged checks. And that these articles were the ones used to make the license that subject Burke had used for identification when she passed the above mentioned forged checks. This information furnished by the informant and an investigation conducted by this officer led to a successful raid on subject Zackular's house in Winthrop and his arrest. . . .
This informant who has proven its reliability in the past by giving to this officer the aforementioned reliable information has given this officer the following information. That prior to this date it was present during a conversation in which Joseph G. Zackular had stated he had a check writer which was being kept at his wife's apartment in Melrose. And that subject Zackular had stated this check writer is the one that had been being used to print amounts of money payable on forged checks. The informant also told this officer that the person that subject Zackular had referred as his wife, to best of the informants *[sic]* knowledge is either his present or past wife. The informant also stated that this subjects *[sic]* name was Jean D. Zackular and that he knew the location of her apartment. On December 14, 1976 this officer with the informant went to the Town Estates in Melrose, and the informant pointed out several windows belonging to the apartment occupied by Jean D. Zackular. . . . On December 15, 1976 this officer went to the Town Estates Apartment Complex and after investigation, it was learned .that subject Jean D. Zackular occupies apartment # 93E located on third floor of 93 Pleasant St., and that this apartment was leased to subject Jean D. Zackular on May 15, 1975, and that the lease is self-extending.

articles located in his apartment at 247 Washington Street, Winthrop, Massachusetts, which were used to manufacture counterfeit licenses and forged checks, including the counterfeit license used by Kathleen Burke for identification when she purchased the above-mentioned airline tickets. This information led to a successful raid of Zackular's apartment and his arrest.

Bellanti's affidavit further set forth that the informant "who has proven its reliability in the past by giving to this officer the aforementioned reliable information" has furnished the following information: "That prior to this date it [the informant] was present during a conversation in which Joseph G. Zackular had stated he had a check writer which was being kept at his wife's apartment in Melrose," and that this check-writer was the one that had been used to print amounts of money payable on forged checks. The informant also told Bellanti that the person Zackular had referred to as his wife was either his present or past wife, and her name was Jean D. Zackular. Finally, the affidavit recites that on December 14, 1976, Bellanti, with the informant, went to the Town Estates in Melrose, where the informant pointed out several windows belonging to the apartment occupied by Jean D. Zackular. On December 15, 1976, Bellanti returned to the apartment complex and learned that Apartment 93E was leased by Jean D. Zackular.

The warrant was issued on December 15, 1976, and the search was conducted on December 17. During the search, a checkwriting machine and a large number of stolen checks were seized.

We agree with the court below that Bellanti's affidavit was insufficient to establish probable cause to issue a search warrant. At the outset, we are aware that we must interpret the affidavit "in a commonsense and realistic fashion," not with "[a] grudg-

ing or negative attitude" or in a "hyper-technical" manner. *United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). Nevertheless, the Fourth Amendment requires that the supporting affidavits set forth facts sufficient to allow a neutral magistrate to reasonably conclude that the property sought is located on the premises to be searched at the time the warrant issues. *Rosencranz v. United States*, 356 F.2d 310, 314–18 (1st Cir. 1966). A reviewing court may consider only that information which is contained within the four corners of the supporting affidavits. *Aguilar v. Texas*, 378 U.S. 108, 109 n.1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Rosencranz v. United States, supra* at 314. The fatal defect in the present affidavit is that it does not disclose the date of the conversation overheard by the informant in which Zackular stated that the checkwriter used to print forged checks was being kept at his wife's apartment in Melrose. Without this date, there was no way for the magistrate to determine whether the information was sufficiently timely to support the warrant. The absence of any reasonably specific averment as to the time of this conversation is fatal to the warrant. *Rosencranz v. United States, supra* at 315–18.

We recognize that where "undated information is factually interrelated with other, dated information in the affidavit, then the inference that the events took place in close proximity to the dates actually given may be permissible." *United States v. Holliday*, 474 F.2d 320, 322 (10th Cir. 1973). Relying on this rule, the Government contends that a reading of the entire affidavit permits an inference that both Bellanti's undated conversation with the informant and the conversation with Zackular overheard by the informant took place between October 24 and December 15, 1976.[2] While we might

---

2. As we reject the invited inference as to its date, we need not reach the question whether the information received by the informant in the conversation with Zackular would be sufficiently timely, under the Government's theory, to support a finding of probable cause at the time the warrant issued. *See Andresen v. Maryland*, 427 U.S. 463, 478–79 n.9, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *United States v.*

*Brinklow*, 560 F.2d 1003, 1005–06 (10th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *United States v. DiMuro*, 540 F.2d 503, 515–16 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 746 (1977); *United States v. Steeves*, 525 F.2d 33, 38 (8th Cir. 1975); *Rosencranz v. United States, supra* at 316 n.3 and cases there cited.

agree that one can reasonably infer from the present affidavit that Bellanti's conversation with the informant took place after October 24, 1976, there is nothing in the affidavit that suggests when the informant obtained the relevant information from Zackular. The affidavit simply states that *"prior to this date* [the date of the warrant application] it [the informant] was present during a conversation in which Joseph G. Zackular had stated he had a checkwriter which was being kept at his wife's apartment in Melrose." (emphasis added). It is impossible to know from the affidavit if the conversation occurred days, months, or years prior to the application for the warrant. As stated by this Court in *Rosencranz v. United States, supra* at 318, "undated, conclusory information from an anonymous source . . . with no other reasonably specific clues to the time" is inadequate to justify a finding of probable cause.

## II

■ We now turn to the issue of defendants' standing to challenge the lawfulness of the search of the Melrose apartment and the seizures of the checks found therein. Although the district court did not articulate its reasons for rejecting the Government's contentions, we agree that defendants have standing.

As a general rule, Fourth Amendment rights may not be vicariously asserted. *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). To contest a search and seizure on Fourth Amendment grounds, a defendant must have either "actual standing" or "automatic standing." To have actual standing, a defendant must establish a legitimate and reasonable expectation of privacy in the premises searched or the property seized. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *see Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). We agree with the Government that neither defendant has

actual standing to contest the lawfulness of the search and seizures. Neither defendant has established a reasonable expectation of privacy in the premises searched or the property seized, nor has either of them ever claimed a proprietary or possessory interest in the premises or the checks. *Id.*

Both defendants, however, have automatic standing to object to the search and seizures under *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In *Jones*, the Supreme Court held that a defendant has automatic standing to challenge the legality of a search or seizure if charged with a crime that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The Court offered a twofold rationale in support of this rule: (1) the unfairness of requiring the defendant to assert a proprietary or possessory interest in the premises searched or the items seized when his statements could later be used at trial to prove a crime of possession; and (2) the vice of prosecutorial self-contradiction, that is, allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes. *Id.* at 261–65, 80 S.Ct. 725; *Brown v. United States, supra* 411 U.S. at 229, 93 S.Ct. 1565.

The first part of this twofold rationale was essentially eliminated by the Supreme Court's holding in *Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that a defendant's testimony in support of a motion to suppress may not be used against him at trial. The Supreme Court itself has questioned, but unfortunately not decided, whether the second prong of the *Jones* rationale, prosecutorial self-contradiction, alone justifies the continued vitality of the doctrine of automatic standing. *See Rakas v. Illinois, supra* 439 U.S. at 128 n.4, 99 S.Ct. 421; *Brown v. United States, supra*, 411 U.S. at 228, 229, 93 S.Ct. 1565. Since the Supreme Court first questioned the vitality of this doctrine in *Brown*, there has been a split of

authority as to whether the doctrine survives. *Compare United States v. Riquelmy*, 572 F.2d 947, 950–51 (2d Cir. 1978), *and United States v. Boston*, 510 F.2d 35, 37–38 (9th Cir. 1974), *cert. denied*, 421 U.S. 990, 95 S.Ct. 1994, 44 L.Ed.2d 480 (1975) (doctrine survives) *with United States v. Delguyd*, 542 F.2d 346, 350 (6th Cir. 1976) (doctrine does not survive). Until the Supreme Court rules on this question, we are not prepared to hold that the automatic standing rule of *Jones* has been implicitly overruled by *Simmons*. That is an issue which the Supreme Court must resolve.

In the present case, the indictment charges that the defendants knowingly and unlawfully possessed checks stolen from the mails "between on or about November 7, 1975 to on or about December 17, 1976," the latter date being that on which the contested search and seizures occurred. They are charged with a crime that includes as an essential element possession of the evidence seized at the time of the contested search and seizures. They, therefore, have automatic standing to object.

*Affirmed.*