DOWNEY, Chief Judge.
In these consolidated appeals the three defendants seek review of an order denying their motions to dismiss and suppress. After denial of the motions, appellants pleaded nolo contendere; final judgment was entered; and these appeals ensued.
The facts as reflected in the record indicate that Palm Beach County Deputy Sheriff Brooks contacted Broward County Deputy Sheriff Voudy and advised Voudy that Brooks had received a tip (the source of which was not disclosed) that a described boat, docked in a residential area of Pompano Beach, was loaded with marijuana.
Thereafter, Voudy, accompanied by seven other law enforcement officers (Pompano Beach police and United States Customs Agents), went looking for the boat. They eventually found a boat which resembled the boat described by Brooks docked at the rear of a residence. When they arrived at the scene, the officers observed no activity. Nevertheless, several of the officers went to the front door of the residence to advise the occupants that they intended to board the boat docked at the rear of the property. Deputy Voudy went immediately into the back yard of the property. Three men exited the rear door of the house. Voudy approached them, showed them his badge, and “advised them to remain where they were.” Voudy testified that the men were not formally placed under arrest; they were simply “detained” there while Customs officers were boarding the boat. Voudy further *973 testified that: the detainees were not formally placed under arrest; “They would have been placed under arrest. It’s just at that point we didn’t verbally tell them that.” In answer to the question, “They were under arrest?”, Voudy answered, “Oh, yeah.”
The Customs officers who boarded the boat found no substantial quantity of contraband; they found only some marijuana residue. While the search of the boat was underway Voudy asked the three detainees if they owned or resided in the house; they answered that they did not. They also acknowledged they did not know the name of the owner of the house. Voudy did not ask them by what authority they were on the property.
Deputy Voudy testified that he suspected a burglary may have been committed so the officers decided to “check the residence to make sure it was secure or if there was anybody else still in the house.” Voudy opened the door from which the detainees had exited and observed a pick-up truck inside the garage with numerous bales of suspected marijuana in the truck and some on the floor. Thereupon, Voudy arrested the detainees for burglary and possession of marijuana. Prior to opening the door to the house Voudy saw nothing unusual occur about the premises. The three men did not exit the house in an unusual fashion; Vou-dy saw no evidence of any breaking and entering, nor had he any report of such, even from the next door neighbors, who were questioned by the officers in the midst of an afternoon backyard barbeque. Upon inquiry by defense counsel Voudy explained the failure to procure a search warrant by saying, “There wasn’t enough for a search warrant for the residence as far as I was concerned.” He did not feel he had sufficient probable cause for obtaining a search warrant. He also stated he had no facts to indicate the detainees had any connection with the boat.
The appellants (the three detainees) were initially charged with possession of cannabis in excess of 100 pounds. They filed a motion seeking suppression of all tangible evidence, statements, and other evidentiary items. At the hearing on said motion the parties stipulated that: the search in question was conducted without a warrant; no consent was given; and when the officers boarded the boat, there was no evidence that the vessel had recently come from a foreign port. At the conclusion of the hearing the trial court announced its findings, which, paraphrased in pertinent part, were:
1) The police illegally entered the property and the rear yard area in question.
2) The police illegally entered the boat.
3) The police interrogation of the defendants was proper.
4) The police entered the house under exigent circumstances.
5) The defendants had no standing to challenge the search of the boat or home.
Regarding the exigent circumstances the trial judge said:
The police had a duty under exigent circumstances to immediately go into that home to find out if anything had occurred in the breaking and entering, including whether a rape or a murder had occurred. They had a duty not to go down and wait for a judge for probable cause to go into that home. They would have been derelict not to check that home. Exigent circumstances. The search and seizure of the home was all right by reason of these exigent circumstances.
Although the three appellants frame the points on appeal somewhat differently, the issues raised are these:
1. Did the defendants have standing to challenge the search of the boat and residence and seizure of contraband?
2. Were the defendants’ rights violated by failure to advise them of their constitutional rights?
3. Did exigent circumstances exist so as to permit the police to enter the residence without a search warrant?
The threshold question to be resolved is appellants’ standing to challenge the search of the boat and house on Fourth and Fourteenth Amendment grounds. In that re *974 gard we note that at the close of his statement of findings setting forth his reasons for denying the motion to suppress the marijuana found in the house the trial judge stated that, “The motion to suppress any tangible evidence found in the home is respectfully denied. One reason and the only reason, no standing to sue (sic). And the home, two reasons, no standing to sue and exigent circumstances.” Thus, it appears the basis for the trial judge’s denial of the motion to suppress was his finding that appellants had no standing to contest upon Fourth and Fourteenth Amendment grounds the search for and seizure of the tangible evidence in the house.
In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court held that when the government charges a defendant with possession of contraband and the defendant moves to suppress that' contraband, the government may not contend the defendant does not have standing to assert a Fourth Amendment violation. The Court recognized that ordinarily one who seeks to challenge the legality of a search in order to suppress evidence must allege, and prove if the allegation is disputed, that his privacy was invaded. However, the Court noted that where the charge was possession of contraband a special problem is created. The Court said:
Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. 362 U.S. at 261-262, 80 S.Ct. at 731.
Thus, the Court concluded that “The possession on the basis of which the petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e).” [1]
Some years later in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court revisited the Jones standing issue, noting:
The dilemma faced by defendant . is most extreme in prosecutions for pos-sessory crimes, for then the testimony required for standing itself proves an element of the offense. We eliminated that Hobson’s choice in Jones v. United States, supra, by relaxing the standing requirements. This Court has never considered squarely the question whether defendants charged with non-possessory crimes . are entitled to be relieved of their dilemma entirely. 390 U.S. at 391, 88 S.Ct. at 975.
The Second District Court of Appeal in Curry v. State, 355 So.2d 462 (Fla. 2d DCA 1978), viewed Jones as estopping the state from asserting “no standing” in the situation under consideration. Judge Grimes, speaking for the court, said:
In Jones, the U.S. Supreme Court held that when the prosecution allege[d] possession as the gravamen of the offense charged, it is estopped from denying possession as a predicate for standing to attack the seizure of the evidence allegedly possessed. To put it another way, if the prosecution is relying upon the seizure to prove a charge of possession, the person charged automatically has standing to contest the legality of the search regardless of whether he had a possessory interest in the premises searched. Thus, Jones was a departure from earlier cases which had held that one must have a possessory interest in the premises being searched in order to have standing to attack the search. 355 So.2d at 463.
Appellee contends that Simmons, by holding that a defendant’s testimony at a suppression hearing may not be used against *975 the defendant at trial, has abolished the Jones automatic standing rule. However, while it has questioned the vitality of the Jones automatic standing rule, the Supreme Court of the United States has never expressly held that the Jones automatic standing rule has perished.
In United States v. Salvucci, 599 F.2d 1094 (1st Cir. 1979), the court held that the following automatic standing rule, extrapolated from Jones, is still the law:
[A] defendant [charged with an offense] has automatic standing to challenge the legality of a search or seizure if charged with a crime that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. 559 F.2d at 1097.
We agree with the reasoning the court followed in reaching its holding that the Jones rule is still the law:
The Supreme Court itself has questioned, but unfortunately not decided, whether the second prong of the Jones rationale, prosecutorial self-contradiction, alone justifies the continued vitality of the doctrine of automatic standing. See Rakas v. Illinois, supra, 439 U.S. [128] at 135 n. 4, 99 S.Ct. 421 [at 426 n. 4, 58 L.Ed.2d 387]; Brown v. United States, supra, 411 U.S. [223] at 228, 229, 93 S.Ct. 1565 [at 1568, 1569, 36 L.Ed.2d 208], Since the Supreme Court first questioned the vitality of this doctrine in Brown, there has been a split of authority as to whether the doctrine survives. Compare United States v. Riquelmy, 572 F.2d 947, 950-51 (2d Cir. 1978), and United States v. Boston, 510 F.2d 35, 37-38 (9th Cir. 1974), cert. denied, 421 U.S. 990, 95 S.Ct. 1994, 44 L.Ed.2d 480 (1975) (doctrine survives) with United States v. Delguyd, 542 F.2d 346, 350 (6th Cir. 1976) (doctrine does not survive). Until the Supreme Court rules on this question, we are not prepared to hold that the automatic standing rule of Jones has been implicitly overruled by Simmons. That is an issue which the Supreme Court must resolve. 599 F.2d at 1097-98.[2]
The sound reasoning of the Salvucci decision impels us to hold that the defendants in this case had automatic standing under Jones v. United States to challenge the search of the boat and residence and the seizure of the contraband. Because the Supreme Court of the United States now has before it and apparently will decide the question whether the Jones automatic standing rule is still to be followed, we hereby certify to the Supreme Court of Florida the following question as being one of great public importance:
Does a defendant have automatic standing to challenge the legality of a search or seizure if he is charged with an offense that includes, as an element of that offense, possession of the seized material at the time of the contested search and seizure?
The next question presented is whether the court was correct in finding that the interrogation of the appellants at the scene was non-custodial, thus obviating the necessity of Miranda warnings. That finding must be approved if the evidence supports it. However, our close scrutiny of the evidence presented at the hearing on the motion to suppress convinces us that the record does not support the trial judge’s conclusion that the interrogation in question was non-custodial. Deputy Voudy stated that while the appellants were not formally placed under arrest, they were in fact under arrest; he simply did not verbally advise them of their status. It is clear that the appellants were not free to leave the scene. Officer Campbell testified that the defendants were “technically under arrest. They would not have been allowed to leave.”
The Fourth Amendment applies to arrests whether announced or unannounced. *976 In the Interest of R. L. J., 336 So.2d 132 (Fla. 1st DCA 1976). “A clear deprivation of liberty caused by law enforcement officials without formal words is nonetheless an arrest.” United States v. Canales, 572 F.2d 1182 (6th Cir. 1978). Thus, it seems to us that not only had the focus of the investigation centered on the appellants, but they were actually in custody as well. Therefore, the officers’ failure to advise them of their constitutional rights required suppression of any statements made to the officers in response to their interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).
Finally, the trial court justified the entry of the house by the police without a warrant on the basis of exigent circumstances. So as not to unduly extend this opinion we would refer to the previous recitation of the facts to show what circumstances were known to the officers. It seems clear to us that the initial entry onto the premises was unlawful, as the trial court found. In addition, the officers did not feel they had sufficient facts constituting probable cause to obtain a search warrant. Yet the trial court found the search of the house was appropriate because there were exigent circumstances. We glean from appellee’s brief that the exigent circumstances were the officers’ suspicions that a burglary of the house was in progress; however, the record does not disclose grounds for such suspicions. As we view this record and the totality of the circumstances, there was neither probable cause nor exigent circumstances, and, of course, both must exist to justify a war-rantless search. As we pointed out earlier, the trial court found that the entry upon the premises was unlawful, and that the search of the boat was unlawful; we agree with those findings. We also hold that the informal arrest of the appellants was unlawful, since the officers had no grounds for any arrest. Any information which could have justified the officers in entering the house without a warrant was garnered by the foregoing unlawful conduct and thus could not be relied upon to authorize such entry. However, even absent the taint, we doubt that the information possessed by the officers would have been sufficient for a search of the house.
In view of the foregoing, we need not reach the propriety of the denial of appellants’ motions to dismiss. Since the trial court erred in denying appellants’ motions to suppress the judgments and sentences appealed from are reversed and the causes are remanded to the trial court with directions that it grant appellants’ motions to suppress.
REVERSED AND REMANDED with directions.
ANSTEAD and GLICKSTEIN, JJ., concur.

. Rule 41(e), Federal Rules of Criminal Procedure, authorizes pretrial motions to suppress illegally obtained evidence.

. We note that the Supreme Court has granted certiorari to review the Salvucci decision and to review a Kentucky Supreme Court decision (Rawlings v. Commonwealth, 581 S.W.2d 348 (Ky.1979)), which implied that the Jones automatic standing rule is no longer to be followed. The cases are to be argued together at some as yet unspecified time. 48 L.W. 3387.