UNITED STATES of America and Thomas F. Harkness, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

CONTINENTAL BANK & TRUST COMPANY, and Jerry W. Lynn, Cashier, Respondents-Appellants.

No. 73–1720.

United States Court of Appeals, Tenth Circuit.

Argued March 18, 1974.

Decided Sept. 10, 1974.

William H. Adams, Salt Lake City, Utah (Peter W. Billings, Fabian & Clendenin, Salt Lake City, Utah, with him on the brief), for appellants.

Robert E. Lindsay, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, John P. Burke, Dept. of Justice, Washington, D. C., of counsel, C. Nelson Day, U. S. Atty., Salt Lake City, Utah, with him on the brief), for appellees.

Before LEWIS, Chief Judge, DURFEE *, Judge, Court of Claims, and BARRETT, Circuit Judge.

* Senior Judge, United States Court of Claims, Washington, D.C.

LEWIS, Chief Judge.

This appeal tests the enforceability of an administrative summons issued under § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602, and served upon the Continental Bank and Trust Company ("the bank") pursuant to § 7603 of the Code, 26 U.S.C. § 7603.

The summons was issued by special agent Thomas L. Harkness of the Internal Revenue Service in connection with his investigation of the income tax liability of Wayne F. and Vola C. Belnap ("the taxpayers"), husband and wife, who were customers of the bank during at least part of the years in question, 1970–71. The summons demanded that the bank produce for examination the following items:

> 1. Such of [the bank's] records as reflect deposits including deposit tickets and deposited items to the account of [the taxpayers] . . . and the account of Belnap Insurance Counselors Trust Account . . . for the period January 1, 1970 to January 1, 1972.
>
> 2. Cancelled checks drawn on the account of [the taxpayers] . . . and the account of Belnap Insurance Counselors Trust Account . . . for the period January 1, 1970 through February 15, 1972.

In response to the summons, the bank appeared and asserted that the examination sought to be conducted pursuant to the summons would involve an unreasonable search of the bank's records in contravention of the fourth amendment, a taking of the bank's property without just compensation in contravention of the fifth amendment, and an infringement upon the right of privacy of other customers of the bank and of persons named either as payees on checks written by taxpayers or as drawers on checks payable to taxpayers. Accordingly, the bank refused to testify or to produce any records for examination.

The IRS thereafter petitioned for the judicial enforcement of its summons under 26 U.S.C. §§ 7402(b) and 7604(a), the district court granted the IRS' motion for summary judgment, and this appeal by the bank followed. We affirm the judgment of the district court.

The import of appellant's fourth amendment argument is that the summons portends an unreasonable search because of the financial burden which such a search would impose upon the appellant. Appellant has not argued, as was done in Bisceglia v. United States, 6 Cir., 486 F.2d 706, cert. granted, 416 U. S. 935, 94 S.Ct. 1931, 40 L.Ed.2d 285, that the summons is unreasonable under the fourth amendment because the IRS has failed to identify with sufficient precision either the records sought or the taxpayer being investigated. Rather, appellant's fourth amendment argument depends here entirely on its argument made under the fifth amendment, and, as a result, our decision on the latter will be dispositive of the former. Moreover, we understand that the bank's fifth amendment "taking" argument refers to the costs of searching and copying records and not to the costs originally incurred in generating and storing the records themselves. By the bank's argument, then, a "taking" could occur only if the bank were ordered to comply with the summons and no provision were made for the payment of that part of the resultant costs that exceeds what is characterized by the bank as a "reasonable burden." Thus, the question first presented is to what extent the bank may be obliged, consistent with the fifth amendment, to absorb the costs of complying with the summons.

The Third Circuit has previously considered the same question in United States v. Dauphin Deposit Trust Co., 3 Cir., 385 F.2d 129, cert. denied, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981. There the appellant bank complained of the financial burden that would result from compliance with a summons which, it was contended, was too expansive. The court noted that the summons did not require the transportation of any records, that the bank could comply merely by providing access to its records

to the IRS agents, and that the IRS had offered to provide its own copying equipment. Expressing "no doubt that the recipient of a summons has a duty of cooperation and that at least up to some point must shoulder the financial burden of cooperation," 385 F.2d at 130, the court concluded that the enforcement of the summons would not impose a financial burden unreasonable under either the fourth or fifth amendments.

The rationale of *Dauphin Deposit* that the existence of a general duty to respond to a government summons justifies the imposition of some financial burden, has been variously expressed in other cases. Thus, in United States v. Jones, 351 F.Supp. 132 (M.D.Ala.1972), the court dealt rather summarily with the bank's financial burden argument, stating that such costs should be borne by the bank as "reasonably incident to the bank's normal operations." 351 F. Supp. at 134. In United States v. First Nat'l Bank, 173 F.Supp. 716 (W.D.Ark. 1959), the court reasoned that the financial burden was unreasonable only where the search could be as well conducted under less expensive procedures and where, in any event, the summons was itself too expansively drafted. (The bank had claimed that compliance would cost almost $30,000.) Significantly, the court relied in part upon Brownson v. United States, 8 Cir., 32 F.2d 844, wherein it was determined that the summons power under an antecedent of 26 U.S.C. § 7602 was similar to the power set forth in analogous statutes and available in federal grand jury proceedings. Again, the court recited the citizen's duty to produce "every man's evidence." 32 F.2d at 847; *see also* United States v. Turner, 7 Cir., 480 F.2d 272, 279; United States v. Widelski, 6 Cir., 452 F.2d 1, 4, cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117; United States v. McKay, 5 Cir., 372 F.2d 174, 176; Bolich v. Rubel, 2 Cir., 67 F.2d 894, 895.

We conclude that, on the facts of the instant case, enforcement of the summons will not result in an unconstitutional "taking" under the fifth amend-

ment. Appellant has not suggested that the summons is insufficiently precise or not issued in furtherance of a legitimate IRS purpose, except to the extent it touches incidentally on the records of third parties. *See* United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L. Ed.2d 112. Thus, no part of the cost of the examination would be attributable to efforts not essential to the proper investigation of the taxpayers by the IRS. The bank is asked to do nothing more than to provide the IRS use of bank records that have been identified specifically by the taxpayers' names and account numbers. Furthermore, the IRS has offered to provide the personnel and equipment required to locate and copy the needed records. The bank has estimated that its total direct costs would be approximately $1500 were it to perform this work itself. Certainly, the bank's costs would be substantially diminished if the IRS were to perform the work, although the bank would, it contends, still incur costs for supervisory personnel who "would have to be present to minimize the disclosure of information relating to third persons." Pretrial Order at 6. Nevertheless, we believe that this summons imposes no unreasonable financial burden on the bank. And, given our conclusion in regard to the rights of third parties, it appears from this record that the bank would in fact incur, at most, a minimal financial burden.

The question of the rights of third parties—persons other than those served with the summons—most often arises where the taxpayer being investigated seeks to intervene in the action brought to enforce the summons. Thus, in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, the taxpayer sought to intervene to prevent the production of his employment and compensation records by his former employer and its accountant. The taxpayer contended that he was entitled as a matter of right to intervene, citing Fed.R.Civ.P. 24(a)(2) and Reisman v. Caplin, 375 U. S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459. The Court, in an effort to clarify some

confusion on that point, which apparently had been engendered by *Reisman* itself, stated unequivocally that taxpayer intervention under *Reisman* was permissive, not mandatory, and that even where a taxpayer sought to prevent the production of items palpably within an attorney-client privilege, no absolute right to intervene existed. 400 U.S. at 529–530, 84 S.Ct. 508. The Court then determined that the taxpayer had no proprietary interest in the records sought, that he had no significantly protectable interest under Rule 24(a)(2), and that as a result he would not be allowed to intervene. 400 U.S. at 530–531, 84 S.Ct. 508.

In the case at bar, the bank asserts derivatively the interests of parties other than the taxpayers, and suggests that as a matter of both constitutional law and statutory construction the summons may not be enforced because of its impact on those interests. We disagree. If, in *Donaldson*, the taxpayer himself could not intervene to assert his own interests, then our conclusion here follows perforce.

In Galbraith v. United States, 10 Cir., 387 F.2d 617, it was argued that the delivery of bank records (including cancelled checks and bank statements) to the Securities & Exchange Commission, pursuant to an administrative summons, violated the fourth and fifth amendment rights of the appellant, the bank customer under investigation. We held, *inter alia*, that the records were the property of the bank, that appellant had no proprietary interest in the records, and that the asserted constitutional guarantees were personal privileges and could not "be projected to the seizure of papers . . . of another." 387 F.2d at 618. Thus, appellant had no standing to raise his constitutional objections. *See also* Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548, wherein it was held that an intervening taxpayer who concededly owned business records in the possession of her accountant, could not prevent their delivery to the IRS under a § 7602 summons on the grounds that her fifth amendment privilege against self-incrimination would thereby be violated.

■■ With similar reasoning, it is evident to us that no constitutional bar exists to the enforcement here of the summons. Had the customers, or even the taxpayers themselves, sought to intervene, they could have asserted no proprietary interest in the bank's records. SEC v. First Security Bank, 10 Cir., 447 F.2d 166, 167, cert. denied, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729; Harris v. United States, 9 Cir., 413 F.2d 316, 318; Galbraith v. United States, 10 Cir., *supra* 387 F.2d at 618; In re Cole, 2 Cir., 342 F.2d 5, 7, cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723. They could have asserted no bank-depositor privilege. SEC v. First Security Bank, *supra* 447 F.2d at 167; Harris v. United States, *supra* 413 F.2d at 319–320; O'Donnell v. Sullivan, 1 Cir., 364 F.2d 43, 44, cert. denied, 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433. Indeed, they were not entitled even to notice of the proposed examination of the bank's records in order that they could seek to intervene. Scarafiotti v. Shea, 10 Cir., 456 F.2d 1052, 1053; In re Cole, *supra* 342 F.2d at 7–8.

■■ Evidently, then, the customers could raise no justifiable expectation of privacy, an essential element, we believe, of a constitutional right of privacy argument. United States v. White, 401 U.S. 745, 751–752, 91 S.Ct. 1122, 28 L.Ed.2d 453; Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 19 L.Ed.2d 576. Thus, the customers could not have asserted sufficiently protectable interests so as to justify their own intervention, and we conclude that the bank is similarly unable to assert successfully the same interests. We feel constrained to observe, however, that the bank's argument in behalf of its customers might have sprung, in part, from some concern that it later be held liable to those customers for the disclosure to the IRS. This same matter was mentioned in both United States v. Dauphin

Deposit Trust Co., *supra* 385 F.2d at 131 n. 2, and United States v. Jones, *supra* 351 F.Supp. at 134. In each case it was disregarded, and we think properly so, on the ground that the disclosure would in any event be pursuant to court order.

The bank's final argument, that the examination purportedly authorized by the summons exceeds the statutory reach of § 7602, is also without merit. The case law history of that section makes clear that § 7602 should be "liberally construed in recognition of the vital public purposes which [it serves]." De Masters v. Arend, 9 Cir., 313 F.2d 79, 87, petition for cert. dismissed, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269; *see also* United States v. Humble Oil & Refining Co., 5 Cir., 488 F.2d 953, 958, and cases cited at 958 n. 11 therein. Of equal importance here, we note that the bank is not concerned about persons who, although unnamed in the summons, might be ferreted out by the examination as objects of further civil or criminal investigation by the IRS. Rather, the bank is concerned about persons whose records would be reviewed only incidentally in the course of an effort to locate and examine the taxpayers' records. Of course, this fact cuts both ways. On the one hand, because no investigation of the third parties themselves is underway, the IRS could not possibly justify a search of their records as an inquiry relevant to a legitimate IRS purpose. On the other hand, the bank has not suggested that the IRS has not issued its summons in good faith, or that the IRS is engaging in some kind of a "fishing expedition" or attempting to investigate indirectly persons whom it could not investigate directly. *See* Bisceglia v. United States, *supra* 486 F.2d at 710–712.

On balance, we believe that the cursory inspection of random records indicated by the summons in this case does not offend the rationale or the language of § 7602. Thus the summons is properly authorized by that section. "Were we to hold otherwise . . . we would un-warrantedly cast doubt upon and stultify the Service's every investigatory move." Donaldson v. United States, *supra* 400 U.S. at 531, 91 S.Ct. at 542.

Affirmed.