The COUNCIL ON JUDICIAL COM-
PLAINTS of the State of Oklahoma and
Marvin Emerson, Ex-Officio Secretary
to the Council on Judicial Complaints,
Petitioners,

v.

John MALEY, District Judge,
Respondent.

No. 54168.

Supreme Court of Oklahoma.

Feb. 26, 1980.

As Corrected on Denial of Rehearing
March 31, 1980.

Paul M. Vassar, Vassar, Craig & Vassar, Chandler, for petitioners.

David Machanic, Washington, D. C., Michael Minnis, Pierson, Ball & Dowd, Oklahoma City, for respondent.

SIMMS, Justice:

In this application for extraordinary relief we are asked to determine the nature and extent of the confidentiality surrounding a complaint lodged against a judge with the Council on Judicial Complaints.

Petitioners are the Council and its ex-officio Secretary, Marvin Emerson. They ask this Court to assume original jurisdiction and prohibit Respondent District Judge from enforcing his order requiring Council, through Emerson, to answer written discovery inquiries in a libel action brought by a lawyer against the Oklahoma Publishing Company (OPUBCO). The subject of the inquiries is the disposition, if any, of a complaint allegedly filed with the Council against a judge.

The essential facts are these. OPUBCO published an article which stated that the Council was investigating a complaint against a district judge alleging that he had manipulated a jury to benefit a certain lawyer. The lawyer named as the beneficiary of the alleged manipulation brought this libel action against OPUBCO. Defendant OPUBCO answered and moved for summary judgment but its motion was denied. OPUBCO then issued and had served on Emerson a subpoena duces tecum directing him to produce the complaint filed with the

Council against the judge. On Council's motion, respondent quashed the subpoena based on the statutory "mandate of secrecy" placed over the Council[1], but on his own initiative, respondent set forth the following inquiries which he believed the Council could and should answer:

(1) Whether the complaint was still pending before the Council;

(2) If so, whether the Council had reached a decision concerning filing with the Court on the Judiciary;

(3) Whether the complaint had been dismissed, i. e., found to have no merit for prosecution before the Court on the Judiciary;

(4) If dismissed, the date of dismissal;

(5) Whether there has been a filing based on the complaint (directing the Attorney General to proceed against the Judge before the Court on the Judiciary);

(6) If so, the date of filing with the Attorney General.

Respondent advised the parties that he would entertain a motion to compel disclosure if the Council refused to voluntarily disclose these facts regarding disposition, if any, of the complaint.

Thereafter, OPUBCO brought an original action in this Court seeking mandamus to require Emerson to provide access to the complaint. We declined to assume original jurisdiction.

OPUBCO then filed a motion with the trial court to compel Emerson to answer the inquiries. Respondent granted the motion and entered an order compelling answers to the above six questions. It is this order which is the subject matter of this application.

## I.

■ We must first be satisfied that jurisdiction over this proceeding rests with this Court rather than the Court on the Judiciary. Although the general subject matter concerns a complaint against a judge, the trial court's order under attack was entered in a libel action. The Court on the Judiciary is without authority to control the actions of a trial judge in any civil action. Its jurisdiction is invoked only when a complaint has been filed with it against a judicial officer alleging one of the causes for removal or compulsory retirement specified in Article VII–A, Okla. Const., or, 20 O.S.Supp.1979, § 1404. Superintending control of inferior courts is vested in the Supreme Court by Article VII, Section 4, of the Oklahoma Constitution, and we therefore find that we have jurisdiction in this matter.

■ While we have jurisdiction over the parties and the issues, the question of whether we should assume original jurisdiction of this application is more difficult because of the factual setting from which these questions arose. The judge's order resulted from OPUBCO'S "Motion to Compel Answers to Inquiries." The only statute cited in support of judicial power to compel answers to inquiries or interrogatories is 12 O.S.1971, § 549 and that statutory authority is clearly limited to *parties* in an action; it does not extend to witnesses. The Council and Emerson stand in the posture of neutral witnesses in the libel action and the court has no authority to compel a witness to answer written discovery inquiries.

■ The real dispute between these parties however, concerns the nature and extent of confidentiality of Council procedures and proceedings—particularly the initiating complaint. We recognize that if we should refuse to answer the questions concerning confidentiality raised in this action, these parties will simply return at a later date with the same questions, for they have shown a dogged determination to have us pass on these matters. The judicial economy interests are not persuasive. We are convinced, however, that the issues need to be addressed because this is a case of first impression which greatly affects a matter of grave public interest—the integrity of our system of judicial administration. That integrity can be preserved only with proper

---

**1.** 20 O.S.Supp.1979, § 1658; See, *In re "Judge Anonymous,"* Okl., 590 P.2d 1181 (1978).

functioning of the Council and the Court on the Judiciary. The Council, the public, the judges, and the press are in obvious need of guidelines regarding the confidentiality of complaints lodged against a judge.

We will therefore assume original jurisdiction and address the issue of confidentiality of a complaint lodged against a judge with the Council.

## II.

■ The Council on Judicial Complaints is only an investigatory body. It may not adjudicate any matter nor impose any sanction. Its authority is limited to investigating a complaint against a judge and deciding the proper disposition of that complaint[2]. It may dismiss the complaint or it may cause jurisdiction of the subject of the complaint to be invoked by the Court on the Judiciary through the Attorney General[3]. See, *In re "Judge Anonymous", Okl., 590 P.2d 1181 (1978).*

The Secretary of the Council[4] must maintain complaint forms, furnish them to interested persons, and generally assist complainants with the completion of forms.[5] Complaints are received by the Secretary and copies sent to each Council member.

The Rules of the Council, promulgated under the authority of 20 O.S.Supp.1979, § 1656, set forth the following procedure to be followed upon receipt of a complaint.

Rule 2 provides:

Each complaint received by the Secretary will be assigned a number and will be logged with the date of receipt shown. It will be placed on the agenda of the next Council meeting with a copy sent to each Council member.

Documents and enclosures shall be dated, described on a sheet of paper, and placed in the complaint file. The Secretary shall bring to each meeting the complete file of the complaints placed on the agenda. In its discretion, the Council may notify a judge of a pending complaint.

Rule 3 provides:

Nothing herein contained shall be construed to prevent the Council from investigating any misconduct on its own initiative.

Rule 4 provides:

Without obtaining prior approval of the other members, the Chairman may direct the Secretary of the Council or Counsel to

---

**2.** 20 O.S.Supp.1979, § 1651, provides:

It hereby is declared to be the public policy of the State of Oklahoma to afford a means whereby complaints by any person concerning the conduct of persons occupying positions in the judicial department of government and subject to the jurisdiction of the Court on the Judiciary may be efficiently and impartially investigated; to provide an agency which can determine whether such complaints should be made the subject of action before the Court on the Judiciary, or should be dismissed; to provide means for procuring necessary information to enable such agency to perform its functions, including the power to issue and enforce subpoenas to testify and to produce tangible evidentiary materials; to provide for the designation of complaining authorities in those cases which should be prosecuted before the Court on the Judiciary; to better the administration of justice in this state through the means enumerated in this act.

**3.** 20 O.S.Supp.1979, § 1659, provides:

In the event the Council finds that the complaint should be made the subject of proceedings before the Court on the Judiciary, it shall forward all papers concerning the same, together with its findings, to the Attorney General, who shall promptly file a petition invoking the jurisdiction of the Trial Division of the Court on the Judiciary in accordance with Section 4(a) of Article 7–A of the Constitution of Oklahoma. Thereafter, the matter shall proceed in accordance with the applicable constitutional provisions, statutes and rules of the said Court on the Judiciary.

**4.** 20 O.S.Supp.1979, § 1655, provides:

There is created the position of Secretary to the Council. He shall receive and file all complaints received concerning the conduct of persons occupying positions in the judicial department of the government and subject to the jurisdiction of the Court on the Judiciary. He shall notify the members of the Council of each complaint filed with him. The Administrative Director of the Courts shall act ex officio as Secretary to the Council. He shall attend all meetings of the Council and shall keep its minutes and perform such other tasks as the Council shall direct.

**5.** See, 20 O.S.Supp.1979, Ch. 22, App. 1, Rule 1.

contact an authorized agency to investigate some or all aspects of a complaint. The Chairman may request this investigation at any stage of the proceeding. The Chairman shall report any investigations begun under this rule to the other Council members at the next meeting of the Council.

Rule 5 provides:

A. The Council, acting pursuant to a majority vote, shall conduct a hearing on any portion of the complaint. The Chairman shall set the time for appearance of the parties or witnesses, and the Secretary shall issue subpoenas.

B. At the hearing each Council member shall have the opportunity to question the witnesses and to examine the evidence. The Council may allow its Counsel and the Council's Ex-Officio Secretary to question witnesses.

C. Every witness shall be placed under oath by the Chairman and shall be required not to disclose the pendency of the proceeding or the identity of the judge being investigated.

Rule 6 provides:

A. After the complaint has been investigated to the extent desired by the majority of the Council, a decision as to the merits of the complaint shall be made by a majority vote.

B. The Secretary shall notify the complainant by mail of the Council's decision. If a judge under investigation testifies at a hearing or receives notice of the complaint, the Secretary may advise him of the Council's decision. Neither a Council member nor the Secretary shall have any further communication with any party involved in the complaint.

Council and Emerson contend that they are bound by a statutory "mandate of secrecy" to refuse to disclose any and all information regarding this alleged complaint and argue that the trial judge's order from which they seek relief is an unauthorized use of judicial force.

20 O.S.Supp.1979, § 1658, provides as follows:

"The Council shall promptly investigate all complaints received by it, and shall determine the proper disposition thereof, as provided in this act. To that end, it shall have power to hold hearings, administer oaths or affirmations, receive testimony and other evidence, issue and serve or cause to be served subpoenas requiring testimony or the production of books, records, papers or other tangible evidence. The Council is hereby authorized to require in aid of its investigatory functions the services of the Oklahoma Bureau of Investigation or of any governmentally supported investigatory agency or upon authorization of the Board of Governors of the Oklahoma Bar Association, of the services of the Oklahoma Bar Association. In the event of contemptuous refusal to obey its lawful orders, it may take such steps as are necessary to maintain order in its session; as to contempts not affecting the maintenance of order, it shall certify the matter to the Chief Justice of the Supreme Court, who shall assign the case for trial and appropriate disposition to a judge of a district court. In such proceeding, the General Counsel of the Oklahoma Bar Association shall act as prosecutor against the alleged contemnor. All proceedings under this section shall be held in secrecy to the same extent as proceedings before a grand jury."

Council and Emerson contend that we have already passed on the confidentiality of a written complaint filed against a judge. They rely on *In re "Judge Anonymous", Okl., 590 P.2d 1181 (1978)*, and in support of their position that the issue has been decided, they set forth the following language from p. 1183 of that opinion:

"Written complaint was filed with the Council on Judicial Complaints (Council) which alleged improper conduct on the part of a District Judge of Oklahoma. Because the complaint still remains pending and unresolved before the Council, the legislative mandate of secrecy found in 20 O.S.1974 Supp., § 1658 will be observed in this opinion in that neither the names of the parties or their attorneys will be mentioned. The Judge against

whom the complaint was lodged will be referred to as District Judge or Judge Anonymous."

They argue that although that decision concerned questions relating to contempt and the confidentiality of the initiating complaint was not directly at issue, our recognition of the pervasive mandate of secrecy governing Council affairs is authority for the confidentiality of the complaint itself.

In its defense of the trial court's order, OPUBCO argues that *Judge Anonymous* did not reach the issue of the confidentiality of the complaint inasmuch as that decision involved other questions. OPUBCO presents these major arguments against the secrecy of a complaint. First, that if Council is not forced to comply with the court's order, it will result in a sanction against OPUBCO for its exercise of First Amendment rights such as is proscribed by *Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978)*. Second, that the complaint is not "part of" the Council "proceedings" of § 1658 and is therefore a public record. In the alternative, if the complaint is "part of the proceedings" then it is a public record because petitions calling a grand jury are public records. Third, OPUBCO argues that this entire matter is already in the public domain by reason of articles published about it by OPUBCO and others and the complaint should therefore be made available to OPUBCO and all others who desire to see it.

We are not persuaded by any of OPUBCO'S arguments.

*Landmark Communications, Inc. v. Virginia, supra,* is not relevant to this action. There a newspaper appealed its conviction for violating a Virginia statute making it a crime to divulge information regarding proceedings of that State's Judicial Inquiry and Review Commission, its statutory body authorized to hear complaints of the disability or misconduct of judges. Those proceedings were declared confidential by Virginia's Constitution and statutes. The newspaper had published an article accu-rately reporting on a pending inquiry and identifying the judge under investigation. The Supreme Court reversed the conviction and remanded, holding that the First Amendment would not permit criminal punishment of third persons who were not participants in the proceedings for divulging or publishing truthful information about the proceedings. The Court concluded that Virginia's interests in the confidentiality of proceedings were insufficient to justify the encroachment on First Amendment guarantees that the imposition of criminal sanctions entails.

Obviously the facts and issues of *Landmark* are far different from those before us. There is no issue here of restraining OPUBCO'S right to publish or of imposing any sanctions, criminal or civil, on OPUBCO for a publication. In our opinion, this action does not present any First Amendment issues.

There are certain aspects of the *Landmark* decision which are relevant and of interest to our present controversy, however. In that opinion the Supreme Court recognized and discussed at some length the virtual uniformity among the jurisdictions in providing for confidentiality in the investigation of complaints against judges. The Court pointed out that at that time 49 jurisdictions had created a mechanism for judicial inquiry and disciplinary procedures, and that with only one exception all jurisdictions imposed some requirement of confidentiality through constitutional, statutory or administrative provisions. Most jurisdictions are similar to Oklahoma in that the guarantee of confidentiality extends only to the point when a formal complaint is filed with the State Supreme Court or equivalent body created to adjudicate the complaint.

The Court noted at 435 U.S. 835, 836, 98 S.Ct. 1539–1540, that the substantial uniformity of requirements showed that confidentiality is perceived as insuring the ultimate effectiveness of the inquiry commissions by advancing the following interests:

"First, confidentiality is thought to encourage the filing of complaints and the willing participation of relevant witnesses

by providing protection against possible retaliation or recrimination. Second, at least until the time when the meritorious can be separated from the frivolous complaints, the confidentiality of the proceedings protects judges from the injury which might result from publication of unexamined and unwarranted complaints. And finally, it is argued, confidence in the judiciary as an institution is maintained by avoiding premature announcement of groundless claims of judicial misconduct or disability since it can be assumed that some frivolous complaints will be made against judicial officers who rarely can satisfy all contending litigants. [citations omitted]

"In addition to advancing these general interests, the confidentiality requirement can be said to facilitate the work of the commissions in several practical respects. When removal or retirement is justified by the charges, judges are more likely to voluntarily resign or retire without the necessity of a formal proceeding if the publicity that would accompany such a proceeding can thereby be avoided. Of course, if the charges become public at an early stage of the investigation, little would be lost—at least from the judge's perspective—by the commencement of formal proceedings. In the more common situation, where the alleged misconduct is not of the magnitude to warrant removal or even censure, the confidentiality of the proceedings allows the judge to be made aware of minor complaints which may appropriately be called to his attention without public notice."

 We agree with OPUBCO that the initiating complaint is not included within the provisions of § 1658 as "part of the proceedings" and that *Judge Anonymous* is not directly on point. It does not follow however that a complaint is therefore a public document, for although the confidentiality of the complaint is not specifically covered by § 1658, the subject is clearly governed by the Rules of the Council. These Rules, promulgated to further the purposes and effect of the statutory public policy of the Council mandate the confiden-

tiality of the complaint. Therefore the policy of secrecy concerning the complaint set forth in *Judge Anonymous* is correct and will be upheld here.

It is absolutely clear that the complaint is not a public document. It is a record required by law to be kept secret. 51 O.S. 1971, § 24. It is extremely significant that the Rules authorize the Council to conduct its investigation without any notice to the judge who is the subject of the complaint. It is also significant that the Council may investigate alleged misconduct on its own initiative. Under the Rules a judge may never know that a complaint against him was received, investigated and dismissed for lack of merit.

For the reasons set forth in *Landmark*, the confidential nature of the complaint itself and the attending complaint procedure further the Council's ability to function efficiently and with the least disruption to the judicial administration system. The glare of publicity would not add a constructive step to the investigatory procedure and would in fact work against the public interest as recognized in *Landmark*.

It would be absurd to adopt OPUBCO'S arguments and allow the complaint itself to be open for public inspection but require the hearing on the complaint to be conducted in secret. Impartial investigation of complaints lodged against members of the judiciary is a laudable and important step in the attempt to furnish our citizens with better government. The confidential investigatory process benefits both our citizens and those who occupy positions on the bench. We will not throw out this confidential procedure and overlook the public policy behind the requirement of confidentiality simply because the Rules could have been more artfully drawn. OPUBCO relies upon general authorities in support of the public policy in favor of openness in government and on 51 O.S.1971, § 24, providing that records will be open for public inspection unless specifically denominated as confidential or secret. We are not unmindful of the importance of openness in govern-

ment. While there are competing public policies, the Rules of the Council promulgated to enable the Council to accomplish the purpose for which it was created, leave no room but to declare that the complaint lodged against a judge with the Council is a record required by law to be kept secret. 51 O.S.1971, § 24. Any other resolution would be wholly unsupported. Public access to the subject matter of meritorious complaint is assured at the time it is ripe for adjudication—when a complaint is filed with the Court on the Judiciary.

OPUBCO'S claim that the information sought from the Council is already in the public domain by reason of newspaper articles pertaining to it is unconvincing. We simply observe that if the judge's name or the existence of an alleged complaint has been made known to the public by reason of dissemination of the information through newspaper stories—it is the defendant newspaper itself which made the information public, not the Council. Nothing before us indicates that the information became public through a breach of confidentiality of Council proceedings. We find therefore that OPUBCO'S reliance on authorities such as *U. S. v. Progressive, 467 F.Supp. 990 (W.D.Wis.1979)* is misplaced.

We notice that attached to the pleadings filed here is a partial deposition of plaintiff in the libel action wherein it is disclosed that he was shown a copy of the complaint by the judge who is apparently the subject of Council investigation. It is apparent that the information OPUBCO seeks to obtain from Mr. Emerson in his capacity as ex-officio Secretary to the Council is readily available from other sources.

In view of the above and foregoing, we find the order compelling the Council on Judicial Complaints through its ex-officio Secretary, Marvin Emerson, to be contradictory to the lawfully imposed mandate of secrecy and confidentiality surrounding Council proceedings.

APPLICATION TO ASSUME ORIGINAL JURISDICTION GRANTED. WRIT OF PROHIBITION ISSUE.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, DOOLIN, and HARGRAVE, JJ., concur.

OPALA, J., concurs specially.

OPALA, Justice, concurring specially:

Our express state policy of affording anonymity to a judicial officer under investigation by the Council on Judicial Complaints is not to be conceived as so airtight as to rule out every exception. Although protection of fundamental values must, in some instances, be considered paramount to this policy, *no* persuasive showing has been made here in favor of lifting the statutory veil of secrecy for the sake of giving recognition to some inexorable command of the Constitution. Cf. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 [1974] and *Oklahoma Publishing Company v. District Court in and for Oklahoma County,* 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 [1977].