Maxine NICHOLS and the Citizens
Bank, Drumright, Oklahoma,
Petitioners,

v.

The COUNCIL ON JUDICIAL
COMPLAINTS of the State
of Oklahoma, Respondent.

No. COC–77–115.

Supreme Court of Oklahoma.

July 22, 1980.

OPALA, Justice:

In this application for extraordinary relief we are asked to determine the validity of a subpoena *duces tecum* directed to bank officer [Bank] during the progress of an investigation by the Council on Judicial Complaints [Council]. More specifically, the issues raised are: [1] Does the subpoena power of the Council extend to a witness other than the judicial officer under investigation? [2] Is the Council impeded, in gaining access to bank records, by either the state or federal financial privacy acts? [3] Did the subpoena fail because it was overly broad in scope? [4] Was the subpoena fatally defective because (a) it was issued by the Council Chairman instead of its Secretary and (b) it directed the party to make an appearance at nongovernmental premises?

We hold that: [1] With respect to judicial misconduct permissible inquiry by the Council is similar in nature to that of a grand jury inquest. [2] Although the federal Right to Financial Privacy Act[1] does not apply to state or local government agencies, the Council must abide by the mandates of the state Financial Privacy Act[2] which requires that notice of the subpoena be given to the customer whose financial records are being sought. [3] Bank, as possessor of third-party records, may not assert its depositor's IVth Amendment right against an unreasonable search and seizure sought to be effected by means of a subpoena that is overbroad. Bank's claim to relief is found in the state Financial Privacy Act which protects the Bank's Vth Amendment property rights against "taking" by requiring that the state agency seeking financial records under the act pay the financial institution affected by the process a reasonable fee for the costs of copying records and for labor necessarily expended. [4] Although Council rules allow the Secretary to issue subpoenas, the authority so delegated does not divest the Chairman of his power to perform a like act. [5] The Council is not

Watson & Watson by Charles D. Watson, Jr., Drumright, for petitioners.

Vassar, Craig & Vassar by Paul M. Vassar, Chandler, for respondent.

1. Enacted as Title XI of the Financial Regulatory Act, 12 U.S.C. § 3401 et seq.

2. Okla.Sess.L.1979, Ch. 191 [6 O.S.Supp. 1979 § 2201 et seq.]. The Act became effective May 17, 1979.

statutorily mandated to conduct its business at any designated location. The Chairman was hence not prohibited from scheduling the subpoena hearing to be held upon the premises of a private law office.

Bank was served a *subpoena duces tecum* issued by the Chairman of the Council on Judicial Complaints. It commanded a Bank official to produce certain data and papers in her possession. The information sought pertains to transactions of a judicial officer then under investigation by the Council. The Bank filed with the Secretary of the Council its motion to quash the subpoena. It was set for hearing at the Council's next scheduled meeting at which the Bank was called upon to produce the records. In this proceeding Bank seeks a writ to prohibit enforcement of the subpoena which is claimed to be without legal efficacy.

I

The Bank contends that the Council's subpoena power stands limited to judicial officers—persons whom the Council has authority to investigate. It argues that the subpoena in suit is an unlawful attempt to launch an unauthorized inquest of the Bank and its officers. The Bank's position is clearly not well taken and its apprehension misplaced. The subpoena directed its official to appear before the Council and bring with her certain records of transactions of a depositor. The Council is statutorily empowered to investigate complaints against judges and to recommend proper disposition to be made.[3] It may conduct investigations and dismiss complaints lodged with it without any notice to the judge.[4] The depositor in question is, without question, a judicial officer. There is nothing in the subpoena or in the papers before us to indicate the Council was exceeding its statutory authori-

ty by attempting to extend the contemplated inquest into the general operations of the Bank *qua* a licensed or regulated financial institution.

The scope of inquiry upon a complaint need not be confined to an examination of the judge under investigation. If the Council is to discharge its public responsibility, the inquest must extend beyond the questioning of the judge. The Council's investigative inquiry—like a grand jury proceeding—is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Council proceedings are statutorily accorded the same safeguard of confidentiality that inheres in grand jury proceedings.[5] The purpose of a grand jury is not complete "until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed."[6] This reasoning applies with equal force to Council investigations. One of the most important investigative tools of the grand jury is its power to subpoena witnesses for testimonial examination and production of documents. The authority of the grand jury to subpoena a witness is "not only historic, but essential to its task."[7] The investigative power of the Council—if it is to fulfill its statutory purpose and best serve the public's interest in the effective and expeditious discharge of its duties—must be as broad in scope as that of a grand jury. Limiting the Council's subpoena power reach to the judge under investigation would severely cripple the Council's ability to perform its investigative function.

II

We next consider Bank's assertion that access to its records is protected from the

---

3. 20 O.S.Supp. 1979 § 1658. Investigations are commenced by formal complaints or by the Council on its own initiative. *In re "Judge Anonymous"*, Okl., 590 P.2d 1181, 1185 [1978]; *The Council on Judicial Complaints of the State v. Maley*, 607 P.2d 1180, 1183 [1980].

4. Rule 6, Rules of Council on Judicial Complaints, 20 O.S., Ch. 22, App. 1.

5. 20 O.S.Supp. 1979 § 1658 provides in pertinent part: " * * * All proceedings under this section shall be held in secrecy to the same extent as proceedings before a grand jury."

6. *United States v. Dionisio*, 410 U.S. 1, 13, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 [1973].

7. *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 [1972].

Council's reach by the federal Right to Financial Privacy Act of 1978 [FPA or Act] [8] which became effective March 10, 1979—nearly three months before the subpoena under consideration here was issued. The Act provides that "[N]o financial institution, or officer, employees, or agent of a financial institution, may provide to any *Government authority* access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter." [Emphasis added] [9] Admittedly, the Council made no attempt to comply with FPA.

The Bank maintains that it is governed by federal banking laws and by the legal limitations imposed by the Act. Accordingly Bank asserts that by this Act the federal Congress has preempted the Council's subpoena power and that access to the Bank's records can be obtained only by strict compliance with the Act's provisions.

■ The Act provides that a government authority may obtain financial records either by administrative subpoena or court process if there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry.[10] It is intended to provide bank customers with a measure of privacy for their financial records in the hands of banks and related institutions.[11] The stated purpose of the Act is to "protect the customers of financial institutions from unwarranted intrusions [by government authority] into their records while at the same time permitting legitimate law enforcement activity." [12] A "customer" is defined as an individual or a partnership composed of five persons or less.[13] "Government authority" is defined as "any agency or department *of the United States,* or any officer, employee, or agent thereof." [14] Only federal agencies are affected by the Act's restrictions.[15] Although Council is not subject to the federal FPA's subpoena restrictions, it must comply with Oklahoma's Financial Privacy Act [16] which provides that a subpoena issued to a

8. Supra note 1.

9. 12 U.S.C. § 3403(a), supra note 1. *The FPA requires pre-production notice to the depositor and affords him an opportunity to challenge the government's attempt to obtain access to the records held by the financial institution.* 12 U.S.C. §§ 3402, 3405–3410.

10. The grand jury subpoena for production of records and papers is exempted from the Act, 12 U.S.C. §§ 3413(i) and 3420, but significant limitations are placed on its use. The documents sought to be produced must actually be presented to the grand jury, can be used only for the purpose of indictment and must be returned or destroyed if no charge is filed. 12 U.S.C. § 3420.

11. H.R.Rep.No.1383, 95th Cong., 2nd Sess. 7 and reprinted in [1978] U.S.Code Cong. & Admin.News, p. 9273 [House Report]; 12 U.S.C. § 3401(1). *The Financial Privacy Act [FPA] constituted the congressional response to the Federal Supreme Court's pronouncement in United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 [1976]. The Court held that account records maintained by a bank are not customer's papers and are hence unprotected by the IVth Amendment. They are rather business records of the bank. The Court said the customer did not have standing to object to access to these records by third parties—that

neither the U. S. Constitution nor the common law protects the individual from disclosure by the bank to government officials of his financial records. *U. S. v. Payner,* —— U.S. ——, 100 S.Ct. 2439, 65 L.Ed.2d 468 [1980].

12. House Report, supra note 11, at 33, U.S. Code Cong. & Admin.News 1978, at 9305.

13. 12 U.S.C. § 3401(4) and (5).

14. 12 U.S.C. § 3401(3).

15. *Early drafts of the Financial Privacy Act [FPA] made it applicable to state, local and federal agencies. In the version in which it was passed FPA applies only to federal agencies.* 12 U.S.C. § 3401(3); House Report, supra note 11 at 247. As a result, bank customers must look to state law for protection of their records from state government or from privately-initiated records' production process. Several states have statutes which limit disclosure of information held by financial institutions. See generally The Report of the Privacy Protection Study Commission, App. 1: Privacy Law in the States 11–13 (1977) [The Privacy Study Commission was created by the Privacy Act of 1974, Pub.L.No.93–579 § 5(a), 88 Stat. 1896 (1974)].

16. Supra note 2.

financial institution[17] by government authority[18] shall be served on the customer,[19] whose records are to be affected, or be mailed to his last known address on or before the date it is served on the financial institution. The customer is granted fourteen days thereafter to challenge the government's attempted access to the records. In the instant case, the subpoena—issued after the enactment of our FPA—was served only upon the Bank. It was hence legally defective and must be ordered quashed. When the subpoena under review was issued, the effect of the Privacy Act was doubtless overlooked. In his brief here Council's lawyer asked that we consider the original subpoena as having been "withdrawn" and that he be allowed to have a new one issued which will comply with applicable law. The Council is accordingly instructed that if it should desire to reissue its subpoena for service on the Bank, it must comply with the procedure prescribed in 6 O.S.Supp. 1979 § 2204(b).

### III

Although our ruling that quashes the subpoena is technically dispositive of all remaining issues before us, we feel it is necessary also to address the Bank's contention that the subpoena under attack here is overbroad because it seeks *any and all records* of transactions that extend over an unreasonable period of time. That issue more than likely will face the Council when the process is reissued. The subpoena's command is for "any and all deposit slips, checks, notes, ledgers and any and all other books and records of any accounts, loans, deposits, certificate of deposits, safety deposit boxes" that its depositor "may have had or carried" on with the bank during a specified five-year period. Bank relies upon *Hale v. Henkel*[20] as a basis for its contention that the Council's demand for "any and all deposit slips" constitutes a constitutionally impermissible intrusion upon its IVth Amendment rights.

Under some circumstances the IVth Amendment's reasonableness standard has been held applicable to a grand jury's *subpoena duces tecum* (a) where incriminating papers and private documents are sought[21] and (b) where *subpoena duces tecum* is overbroad and hence may be viewed as an unreasonable search and seizure within the meaning of the IVth Amendment.[22]

17. 6 O.S.Supp. 1979 § 2202(a); "Financial institution" is defined as "any office or branch of a bank, savings bank, savings association, building and loan association, and savings and loan association located in the State of Oklahoma."

18. 6 O.S.Supp. 1979 § 2202(c); "Government authority" is defined as "any agency, board, commission or department of the State of Oklahoma, or any officer, employee, representative, or agent thereof."

19. 6 O.S.Supp. 1979 § 2202(d); "Customer" is defined as "any person, corporation, partnership or other legal entity, or authorized representative thereof, who utilized or is utilizing a service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the customer's name."

20. 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 [1906].

21. Illustrative of this situation is *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 [1886] where a federal prosecutor secured a subpoena requiring Boyd to produce an incriminating document. The Supreme Court held that compulsory production of private papers to establish a criminal charge is to be treated as a search and seizure under the IVth Amendment. The Court decided that the IVth Amendment's prohibition against unreasonable searches and seizures is applicable to noncriminal proceedings. Relying on the inter-relationship of the IVth and Vth Amendments, the Court held the two amendments illuminate one another and justify results not mandated solely by either. The Vth Amendment throws light on what is an unreasonable search and seizure under the IVth Amendment.

22. Whereas *Boyd*, supra note 22, relied on the IVth and Vth Amendments to quash an impermissible subpoena *duces tecum*, *Henkel*, supra note 21, invoked solely the IVth Amendment. *Henkel* decided that an overly broad subpoena "may constitute an unreasonable search and seizure within the 4th Amendment." 201 U.S. at 76, 26 S.Ct. at 379. The grand jury's subpoena had required the production of virtually all the documents, papers, and books found in the office of a corporation under investigation for antitrust violations, and, as the Court noted, if the subpoena had been complied with, the business of the company would probably have

The IVth Amendment, as well as its counterpart in our state constitution,[23] guarantees that all people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures". "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State."[24] Its essential purpose is to extend protection "wherever an individual may harbour a reasonable 'expectation of privacy'".[25] What is reasonable must be tested here not by the Bank's rights, but by those of the person against whom the papers are intended to be used. The Bank, of course, has no privacy expectation in its customers' papers. Its own rights are limited to those of a possessor from whom records are sought to be produced. In short, the Bank has *no* standing to invoke the IVth Amendment's protection of the depositor-judge, if any there be in the situation under our examination here.[26]

The Bank is granted relief from an overboard subpoena by 6 O.S.Supp. 1979 § 2206. That section directs the government authority affected to pay a reasonable fee for the labor and copying costs incurred by the financial institution subject to the process in assembling and reproducing financial records of customers. Had these provisions been absent from our FPA, the Bank's claim, if it has one, may have been rested on the protection of the Vth Amendment's and our state constitution's[27] due process clauses. Both of these prohibit the government from depriving the Bank of property. That claim could be anchored on the financial burden imposed on the business by the government's command to locate, retrieve and reproduce a large volume of requested material. A demand for production of records may, in some circumstances, constitute a constitutionally impermissible "taking" of private property without just compensation. But no such claim has been asserted here.[28]

The court is not unsolicitous of Bank's rights. However, there is nothing before us by which we can measure its claim if indeed it is not *de minimis.* Nor is the issue raised. We need not consider Bank's rights, if any under the Vth Amendment's Due Process Clause, its state counterpart and the state Financial Privacy Act.

been brought to a halt. In support of its decision, the Court compared the subpoena to a search warrant, stating that "[a] general subpoena of this description is equally indefensible as a search warrant would be if couched in similar terms." 201 U.S. at 77, 26 S.Ct. at 380.

**23.** Art. II § 30, Okl. Con.

**24.** *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 [1966]; *United States v. Dionisio*, supra note 6, 410 U.S. at 8, 93 S.Ct. at 768.

**25.** *Terry v. State of Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 [1968]; *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 [1967].

**26.** IVth Amendment rights can be asserted only by those with an expectation of privacy in the property seized or sought to be seized. *Others are without legally sufficient interest which the IVth Amendment was designed to protect.* U. S. v. Payner, supra note 12; *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 428–430, 58 L.Ed.2d 387 [1978]; *United States v. Salvucci*, 599 F.2d 1094, 1097 [1st Cir. 1979]; *United States v. Rios*, 611 F.2d 1335, 1344–1345 [10th Cir. 1979]; *In re Grand Jury Proceedings*, 601 F.2d 162, 170 [5th Cir. 1979].

**27.** Art. II § 7, Okl. Con. [due process of law] and Art. II § 23, Okl. Con. [taking of private property].

**28.** The government's command for production of documents has been challenged on the basis of the Vth Amendment's prohibition against "taking". Some courts have held that banks have a civic duty to cooperate by shouldering the financial burden [*United States v. Continental Bank & Trust Co.*, 503 F.2d 45, 48 (10th Cir. 1974) and *United States v. Dauphin Deposit Trust Co.*, 385 U.S. 129, 130 (3rd Cir. 1967)], while others have found that the expenses incurred in the process of compliance are part of the normal expense of doing business as a bank. *United States v. Bremicker*, 365 F.Supp. 701, 703 [D.Minn. 1973] and *United States v. Jones*, 351 F.Supp. 132, 134 [M.D.Ala. 1972]. More recent decisions have supported the view that banks should, as a matter of course, be reimbursed for costs incurred in meeting the government's command. *United States v. Farmers & Merchants Bank*, 397 F.Supp. 418, 420 [C.D.Cal. 1975] and *United States v. Friedman*, 388 F.Supp. 963, 970 [W.D.Pa. 1975].

## IV

We also address here two additional contentions raised by Bank solely for the purpose of giving procedural guidance in Council matters. The Bank contends that the subpoena is fatally defective on two grounds: [1] it was issued by the Council's Chairman instead of its authorized agent, the ex-officio Secretary—the Administrative Director of the Courts and [2] the subpoena directs the Bank official to appear for a hearing at the private premises of the Chairman's law office.

█ Bank's complaint is essentially that the act of issuing a subpoena is the Secretary's nondelegable duty. We find this contention to be without merit. The Council is by statute authorized to issue subpoenas and conduct hearings in aid of its investigatory function.[29] The statute directs the Secretary to aid the Council in the performance of its duties.[30] The Secretary was designated by Council rule to perform the clerical task of issuing—preparing and mailing out—subpoenas.[31] Only the Council itself may determine when and to whom a subpoena should issue. It was hence not error for the Council Chairman, *qua* principal, to do that which he could also delegate to be done by his agent—the Secretary. In short, the authority to issue subpoenas is—by Council's management rules—a *delegated* duty of the Secretary which may also be performed by the principal head of the agency.

█ Bank's second contention is equally without merit. The Council is restricted neither by statute nor by rule to transact its business at any particular location. Official acts of public officers are presumed to be correct and legal in the absence of a clear showing to the contrary.[32] Within the broad confines of applicable legislation, wide discretion is accorded, and may be exercised by, administrative officials in designating the place at which to conduct hearings.[33] To put it simply, the choice of the hearing situs was the Chairman's act of discretion.

The subpoena is defective because of noncompliance with the procedure prescribed by the state Financial Privacy Act. Writ granted quashing the subpoena without prejudice to its reissuance in compliance with the applicable law and the guidelines in this opinion.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES and DOOLIN, JJ., concurring.

HARGRAVE and SIMMS, JJ., concurring in part.

SIMMS, J., joins in the views expressed by HARGRAVE, J.

HARGRAVE, Justice, concurring in part:

I would quash the subpoena considered in this proceeding for the sole reason that the Respondent has conceded that the subpoena issued herein did not comply with the laws of this State in force at the time of issuance.

---

29. 20 O.S.Supp. 1979 § 1658.

30. 20 O.S.Supp. 1979 § 1655.

31. Rule 5 A, Rules of Council on Judicial Complaints, 20 O.S., Ch. 22, App. 1.

32. *Edmondson v. Burke*, Okl., 435 P.2d 576, 578 [1967]; *Oklahoma Turnpike Authority v. Powers*, Okl., 421 P.2d 254, 256 [1966].

33. An agency may be allowed by law to perform acts in several counties although its "official residence" is deemed to lie in one place. The Council is not required to hold meetings at any particular location. Its official acts might—for venue purposes—be considered as having been performed at the place where the Council's "official residence" lies. *State v. District Court of Bryan County*, Okl., 290 P.2d 413, 417 [1955]. See also *Burri v. Campbell*, 102 Ariz. 541, 434 P.2d 627, 629 [1968].